Angel R. Sevilla (State Bar No. 239072)
Jessica C. Shafer (State Bar No. 297856)
Julianna Bramwell (State Bar No. 238568)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone:  (415) 394-9400
Facsimile:  (415) 394-9401
E-mail:  Angel.Sevilla@jacksonlewis.com
E-mail:  Jessica.Shafer@jacksonlewis.com
E-mail:  Julianna.Bramwell@jacksonlewis.com

Attorneys for Defendant
CALIFORNIA COLLEGE OF THE ARTS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| KAREN FISS,<br><br>             Plaintiff,<br><br>      v.<br><br>CALIFORNIA COLLEGE OF THE ARTS,<br><br>             Defendant. | Case No. 4:24-cv-03415-HSG<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:        October 3, 2024<br>Time:       2:00 p.m.<br>Ctrm.:      2 – 4th Floor<br>Judge:      Hon. Haywood S. Gilliam, Jr., District Judge<br><br>Complaint Filed:   06/06/2024<br>Trial Date:          Not Set |

1    TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on Thursday, October 3, 2024, at 2:00 p.m., or as soon

3    thereafter as the matter may be heard by the Honorable Haywood Gilliam in Courtroom 2 of the

4    above-referenced Court located at 1301 Clay Street, Oakland, California 94612, Defendant

5    California College of the Arts ("Defendant" or "CCA") will and hereby does move for an order

6    dismissing Plaintiff Karen Fiss' ("Plaintiff") Complaint with prejudice pursuant to Rule 12(b)(6)

7    of the Federal Rules of Civil Procedure.  This Motion is based on this Notice of Motion and

8    Motion, the below Memorandum of Points and Authorities, all papers on file, and any authority or

9    argument presented in the reply and at any hearing.

10                        **STATEMENT OF RELIEF SOUGHT**

11        Defendant seeks dismissal of all claims without leave to amend pursuant to Fed. R. Civ. P.

12   12(b)(6).

13   Dated:  August 8, 2024                    JACKSON LEWIS P.C.

14

15                                  By:    /s/ Jessica C. Shafer
16                                         Angel R. Sevilla
                                           Jessica C. Shafer
17                                         Julianna Bramwell
                                           Attorneys for Defendant
18                                         CALIFORNIA COLLEGE OF THE ARTS

19

20

21

22

23

24

25

26

27

28

Defendant's Notice of Motion and Motion to Dismiss
the Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.                    Case No. 4:24-cv-03415-HSG

# TABLE OF CONTENTS

                                                                                            **Page(s)**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF ALLEGED FACTS ................................................................. 1

        A.      CCA's Commitment to Civil Rights .......................................................... 1

        B.      CCA's Response to Plaintiff's Complaint About the Content of an
                Instagram Post .......................................................................................... 2

        C.      CCA's Response to Student Complaints of Harassment By Plaintiff................. 3

        D.      Plaintiff's Other Vague Allegations of Antisemitism at CCA............................ 4

III.    LEGAL STANDARD ........................................................................................... 5

IV.     ARGUMENT ......................................................................................................... 5

        A.      Plaintiff Fails to State a Title VII Claim. ................................................. 5

                1.      Disparate Treatment ....................................................................... 5

                2.      Hostile Work Environment ............................................................ 7

        B.      Plaintiff Fails to State a Title VI Claim. ................................................. 9

                1.      Plaintiff Does Not Plead Essential Facts Relating to CCA's
                        Financial Assistance....................................................................... 9

                2.      Plaintiff Fails to Plead Direct Discrimination. .......................... 10

                3.      Plaintiff Fails to State a Hostile Environment Claim............................. 10

        C.      Plaintiff Fails to State a Claim Under Education Code Section 220................. 11

                1.      Plaintiff Did Not Exhaust Her Administrative Remedies. .................... 11

                2.      CCA Is Not an "Educational Institution" Under Section 220............... 12

                3.      Plaintiff Has Not Plausibly Alleged Her Claim Under Section 220. ..... 12

        D.      Plaintiff Fails to State a Claim Under Government Code Section 12920.......... 12

        E.      Plaintiff Fails to State a Breach of Contract Claim........................................... 13

V.      CONCLUSION ................................................................................................... 14

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Anicama v. Oracle Am., Inc.*,
   No. 23-cv-04640-EMC, 2024 U.S. Dist. LEXIS 124323 (N.D. Cal. July 15,
   2024) .......................................................................................................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 5

*Borja-Valdes v. City and Cty. of San Francisco*,
   No. 3:14-cv-04168-CRB, 2015 U.S. Dist. LEXIS 125252, 2015 WL 5522287
   (N.D. Cal. Sept. 18, 2015) ............................................................................ 5

*Campbell v. State Dep't of Educ.*,
   892 F.3d 1005 (9th Cir. 2018) ................................................................... 6, 7

*Chuang v. Univ. of Cal. Davis, Bd. of Trs.*,
   225 F.3d 1115 (9th Cir. 2000) ....................................................................... 6

*Davis v. Monroe County Bd. of Educ.*,
   526 U.S. 629, 652 (1999) ............................................................................ 10

*Davis v. Team Elec. Co.*,
   520 F.3d 1080, 1089 (9th Cir. 2008) .............................................................. 6

*Doe v. Willits Unified School Dist.*,
   473 Fed. Appx. 775, 775-76 (9th Cir. 2012) ................................................. 10

*Dominquez-Curry v. Nev. Transp. Dep't*,
   424 F.3d 1027 (9th Cir. 2005) ....................................................................... 7

*Faragher v City of Boca Raton*,
   524 U.S. 775 (1998) ..................................................................................... 8

*Farmearl v. Storopack, Inc.*,
   No. C-04-02633 RMW, 2005 U.S. Dist. LEXIS 34293 (N.D. Cal. Sep. 12,
   2005) .......................................................................................................... 13

*Fobbs v. Holy Cross Health Sys. Corp.*,
   29 F.3d 1439 (9th Cir. 1994) ......................................................................... 9

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993) ....................................................................................... 8

*Hashimoto v. Dalton*,
   118 F.3d 671 (9th Cir. 1997) ......................................................................... 6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*Ivey v. Board of Regents*,
    673 F.2d 266 (9th Cir. 1982)..................................................................................... 7

*James v. C-Tran*,
    130 Fed. Appx. 156 (9th Cir. 2005) ........................................................................ 6

*Lee v. Foothill-De Anza Cmty. Coll. Dist.*,
    No. 23-cv-03418-PCP, 2024 U.S. Dist. LEXIS 83240 (N.D. Cal. May 7,
    2024) .......................................................................................................................... 7

*Leland v. City & Cnty. of San Francisco*,
    576 F. Supp. 2d 1079 (N.D. Cal. 2008) ............................................................... 12

*Lyons v. England*,
    307 F.3d 1092 (9th Cir. 2002).................................................................................. 5

*Mandel v. Bd. of Trs. of Cal. State Univ.*,
    No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871 (N.D. Cal. Mar. 9,
    2018) .................................................................................................................. 10, 11

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ............................................................................................ 5, 10

*Monteiro v. Tempe Union High Sch. Dist.*,
    158 F.3d 1022, 1033 (9th Cir. 1998) .................................................................... 10

*Nava v. VirtualBank*,
    No. 2:08-CV-00069-FCD-KJM, 2008 U.S. Dist. LEXIS 72819 (E.D. Cal. July
    16, 2008) .................................................................................................................. 13

*Nicholson v. Hyannis Air Serv., Inc.*,
    580 F.3d 1116, 1125 (9th Cir. 2009) ...................................................................... 7

*O'Brien v. XPO CNW, Inc.*,
    362 F.Supp.3d 778 (N.D. Cal. 2018) ................................................................... 13

*R.N. v. Travis Unified Sch. Dist.*,
    No. 2:20-cv-00562-KJM-JDP, 202 U.S. Dist. LEXIS 230624 (E.D. Cal. Dec.
    8, 2020) .................................................................................................................... 12

*Rashdan v. Giessberger*,
    764 F.3d 1179 (9th Cir. 2014)................................................................................ 10

*Ray v. Henderson*,
    217 F.3d 1234 (9th Cir. 2000)................................................................................. 6

*Sharp v. S&S Activewear, L.L.C.*,
    69 F.4th 974, 978-79 (9th Cir. 2023) ..................................................................... 7

iii

*Small v. Feather River College*,
  No. 2:10-cv-3026-JAM-GGH, 2011 U.S. Dist. LEXIS 51579 (E.D. Cal. May
  2, 2011) ........................................................................................................... 9

*Stallcop v. Kaiser Foundation Hospitals*,
  820 F.2d 1044 (9th Cir. 1987).......................................................................... 6

*Starr v. Baca*,
  653 F.3d 1202 (9th Cir. 2011).......................................................................... 13

*Strothers v. S. Cal. Permanente Med. Group*,
  79 F.3d 859 (9th Cir. 1996)............................................................................... 6

*Temengil v. Trust Territory of the Pacific Islands*,
  881 F.2d 647 (9th Cir. 1989)............................................................................. 9

*Yartzoff v. Thomas*,
  809 F.2d 1371 (9th Cir. 1987)........................................................................... 6

**California Cases**

*A.J. Industries, Inc. v. Ver Halen*,
  75 Cal.App.3d 751, 761 (1977) ........................................................................ 13

*Burgess v. Superior Ct.*,
  2 Cal.4th 1064 (1992) ....................................................................................... 14

*Chelini v. Nieri*,
  32 Cal.2d 480 (1948) ........................................................................................ 14

*Donovan v. Poway Unified School Dist.*,
  167 Cal. App. 4th 567 (2008)............................................................................ 11

*Erlich v. Menezes*,
  21 Cal.4th 543 (1999) ................................................................................. 13, 14

*Foroudi v. Aerospace Corp.*,
  57 Cal. App. 922, 1002 (2000).......................................................................... 12

*Gao v. Hawaii Dep't of the Attorney General*,
  No. 09-00478 DAE-BMK, 2010 U.S. Dist. LEXIS 2073 (D. Hawaii Jan. 12,
  2010) ................................................................................................................. 9

*Guz v. Bechtel Nat. Inc.*,
  24 Cal.4th 317 (2000) ................................................................................. 12, 13

*Kately v. Wilkinson*,
  148 Cal.App.3d 576 (1983)............................................................................... 14

iv

*Lyle v. Warner Bros. Television Prods.,*
    38 Cal. 4th 264 (2006) ................................................................................................. 13

**Federal Statutes**

42 U.S.C.
    § 2000d-3 .................................................................................................................... 9
    § 2000e-2(a) ................................................................................................................ 5

Fed. R. Civ. P. 12(e) ............................................................................................................. 13
    Rule 12(b)(6) ................................................................................................................ 5

**California Statutes**

Cal. Civ. Code
    § 1550 ......................................................................................................................... 13

Cal. Educ. Code
    § 210.3 ....................................................................................................................... 12
    § 220 .......................................................................................................................... 12
    § 262.3 ....................................................................................................................... 11
    § 262.3(d) ................................................................................................................... 11

Cal. Gov't Code
    Section 12920 ............................................................................................................ 12

California Fair Employment and Housing Act (FEHA) ....................................................... 12, 13

California Labor Code ........................................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The hallmark of higher education lies in fostering an environment where students can engage in active and respectful discussion about current events and issues that affect their communities.  California College of the Arts ("CCA"), a private arts college located in San Francisco, California, is committed to providing an academic setting where all individuals can partake in such discourse without fear of discrimination or harassment.

Especially regarding complex and controversial issues, CCA expects that faculty members will facilitate healthy discussion and the free exchange of ideas.  Plaintiff, however, sought to silence this expression, thereby harassing students and using her position to impose her views on others in direct violation of CCA's reasonable policies.  Under the pretense of anti-discrimination laws, Plaintiff's lawsuit is a blatant attempt to suppress free speech rights, a slippery slope the Court should elect not to tread.  For these reasons and those discussed below, the Court should dismiss Plaintiff's Complaint without leave to amend.

## II.     STATEMENT OF ALLEGED FACTS[1]

### A.     CCA's Commitment to Civil Rights

CCA stands firmly against antisemitism and has long been committed to the equal treatment of all persons regardless of race, color, national origin, ancestry, and religion.  *See* Compl. ¶ 189.  CCA's written policy prohibits harassment and discrimination on the basis of these and other protected characteristics.  *Id.*  CCA provides a reporting procedure for alleged violations of this policy to its employees.  *Id.* ¶ 190.  CCA investigates and attempts to resolve any and all such employee complaints.  *Id.* ¶¶ 65-69.

CCA also maintains that free expression is indispensable to the transmission of knowledge and to the fulfillment of its academic enterprise.  *Id.* Ex. H.  CCA promotes, through policy and practice, productive and respectful discourse within its diverse community composed of students,

///

---

[1] Defendant repeats certain allegations from Plaintiff's Complaint.  Although the allegations are materially false, incomplete, or misleading in numerous respects, Defendant treats these allegations as true solely for the purpose of this Motion to Dismiss.

staff, and faculty.  *Id.*  CCA strives, in all contexts, to balance these rights in an equitable and nondiscriminatory manner.  *Id.*

**B.    CCA's Response to Plaintiff's Complaint About the Content of an Instagram Post**

Plaintiff alleges that on October 7, 2023, members of Hamas perpetrated a brutal terrorist attack on Israel and its citizens.  *Id.* ¶¶ 57-58.  Shortly thereafter, on October 10, 2023, CCA's president issued a "[s]tatement of support and resources" about the "horrific and devastating events that unfolded over the weekend in Israel and Gaza."  *Id.* ¶ 64, Ex. E.  The statement recognized that "[f]aculty may be struggling with how to address this moment in their classrooms and studios" and that "[s]tudents may be experiencing anxiety in a violent and uncertain world."  *Id.* Ex. E.  It also presented community support resources for students and faculty alike.  *Id.*

On October 11, 2023, an Instagram account known as "cca_critical_ethnic_studies" posted a photo of a protest in which a protestor holds a sign stating that "Decolonization Is Not a Dinner Party."  *Id.* ¶ 60, Ex. F.  The accompanying caption stated, "[o]ur program has a stellar record of teaching the historical and contemporary context of Israel's colonial legacy in Palestine."  *Id.* Ex. F.  It stated further, "[w]e stand in solidarity with all of our community members who strive for a peaceful world and mourn for all of the lives lost."  *Id.*  The post was "liked" by at least 52 Instagram account holders, many of whom were not affiliated with CCA.  *Id.*

Ten days later, on October 20, 2023, Plaintiff complained to CCA about the Instagram post.  *Id.* ¶ 65.  In her complaint, Plaintiff stated that she "was not aware of [the Instagram post] at first" until a non-Jewish colleague brought it to her attention.  *Id.* Ex. G.  Maira Lazdins, CCA's Vice President of Human Resources, responded to Plaintiff that CCA rejects "hate speech, antisemitism, and Islamophobia," but recognizes that "diverging opinions on substantive issues can coexist."  *Id.* ¶ 66, Ex. H.  Lazdins also thanked Plaintiff for sharing her perspective.  *Id.*, Ex. H.

CCA thereafter commenced an investigation of Plaintiff's complaint by way of an outside investigator.  *Id.* ¶ 68.  CCA removed the Instagram post at the start of the investigation, a decision that became permanent.  *Id.* ¶ 68; *see also id.* Ex. J.  Plaintiff spoke with the investigator on January

2

2, 2024. *Id.* On February 1, 2024, CCA notified Plaintiff that it had concluded its investigation, finding that the Instagram post did not violate any of CCA's policies. *Id.* ¶ 69. CCA assured Plaintiff that it would take "additional proactive steps to promote dialogue, and to offer additional support, to ensure that the CCA community can continue to engage in open, respectful discourse." *Id.* Ex. J.

## C. CCA's Response to Student Complaints of Harassment By Plaintiff

On November 16, 2023, CCA's Director of Human Resources, Suzanne Guevarra, contacted Plaintiff to inform her that CCA had received two student complaints about her. *Id.* ¶¶ 91-92, Ex. M. The first student complaint alleged that Plaintiff sent "inappropriate" emails to the "google group" of Havurah, a Jewish student organization. *Id.* Ex. M. The second student complaint alleged that Plaintiff had acted in a harassing and discriminatory manner. *Id.*

Regarding the latter incident, Plaintiff alleges that she encountered students affiliated with a group known as Students for Justice in Palestine ("SJP") in the nave on CCA's campus. *Id.* ¶ 79. Plaintiff observed that the students were standing at a table, behind which a handmade poster was hung. *Id.* ¶ 81. Plaintiff alleges that the poster "called for the 'liberation of Palestine' 'From the River to the Sea'" and displayed "a map of Israel with the colors of the Palestinian flag over the entire country". *Id.* Plaintiff admits that she took a photo of the students in front of the sign. *Id.* Plaintiff thereafter engaged in a conversation with the students. *Id.* ¶¶ 84-85. One of the students informed Plaintiff that she was from Kuwait. *Id.* ¶ 86. In response, Plaintiff "brought up the challenges Palestinians faced in Kuwait, citing the deportation of over 300,000 Palestinians from Kuwait in 1991." *Id.* Plaintiff also asked the students "where they got their news from" and stated that she "tries to read news and academic articles from a wide range of political viewpoints to ensure that she doesn't end up in an echo-chamber". *Id.* ¶¶ 86-87. A student allegedly responded that she "liked her echo chamber." *Id.* ¶ 88. Plaintiff then walked away from the conversation. *Id.* at 88.

CCA investigated these student complaints, which investigation included interviews of Plaintiff, the student that lodged the complaint regarding inappropriate emails, and the two student witnesses to the incident in the nave. *Id.* ¶¶ 96-97. As to the first student complaint, CCA's Human

3

Resources department found that Plaintiff had not violated any policies in sending emails to the Havurah group. *Id.* Ex. N. As to the second student complaint, CCA's investigation yielded the following findings regarding Plaintiff's conduct:

- Plaintiff "took photographs of the students and of their table and made the students feel threatened" (*id.* Ex. N);

- "The nature and tone of the statements" by Plaintiff "caused the students to reasonably believe" that Plaintiff had used her "positional power as a Professor" to gain the agreement of the students (*id.*);

- When Plaintiff learned that one of the students with whom she spoke was from Kuwait, Plaintiff "began explaining the history of [the student's] country to her" (*id.* ¶ 104);

- Plaintiff "told the students that they 'live in an echo chamber'" (*id.* Ex. N); and

- The students reported that the interaction was "aggressive, inappropriate, combative, heated and disrespectful" (*id.* Ex. N).

CCA ultimately concluded that some of Plaintiff's conduct violated CCA's policies, including its antiharassment and professional ethics policies. *Id.* ¶ 102, Ex. N. CCA therefore required Plaintiff to delete any photos she took of the students, to take trainings titled "Supporting Diversity, Equity, Inclusion, and Belonging" and "Preventing Harassment & Discrimination," and to review and sign copies of the policies she was found to have violated. *Id.* ¶ 105, Ex. N.

### D. Plaintiff's Other Vague Allegations of Antisemitism at CCA

Plaintiff alleges a handful of other events to support her claims of discrimination and hostile work environment by CCA. Those events include vague and undated incidents of alleged harassment of Jewish students "for not supporting [the] dominant ideology" (*id.* ¶¶ 9); vague and undated Jewish and non-Jewish student complaints regarding "antisemitic experiences" (*id.* ¶¶ 13-15, 76); an undated and unattributed comment during a meeting (*id.* at ¶ 50); and a student complaint against another Jewish teacher, the outcome of which is not pleaded (*id.* at ¶¶ 94-95). They also include alleged inaction by CCA, including allegedly failing to issue public statements regarding "violence done to Jews" (*id.* at ¶ 38) (despite the fact that CCA issued a statement regarding the October 7, 2023, terrorist attack only days later (*id.* ¶ 41)) and failing to assist Plaintiff with a "Muslim student in her class" who "ignored the assignment" and sought to focus on Al-Aqsa Mosque for her final project (*id.* ¶ 120).

4

Defendant's Notice of Motion and Motion to Dismiss
the Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.                    Case No. 4:24-cv-03415-HSG

### III.   LEGAL STANDARD

This Court should grant a Rule 12(b)(6) motion when the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A court should disregard conclusory factual allegations and "draw on its judicial experience and common sense" to determine whether a claim is plausible. *Id.* at 678-79.

### IV.   ARGUMENT

### A.   Plaintiff Fails to State a Title VII Claim.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges" or "to limit, segregate, or classify [] employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee" because of employment because of her religion or national origin.  42 U.S.C. § 2000e-2(a).  Plaintiff alleges that, in violation of Title VII, CCA subjected her to intentional discrimination and a hostile work environment on the basis of her religion and ethnic origin.  Compl. ¶¶ 134, 136.

### 1.   Disparate Treatment

Although Plaintiff's Title VII claim is titled "Hostile Work Environment," a disparate treatment claim is implied.  To establish a prima facie case of disparate treatment, a plaintiff must provide evidence giving rise to an inference of unlawful discrimination.  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).  A plaintiff may provide direct or circumstantial evidence to establish a prima facie case for unlawful discrimination, but if direct evidence is not available, a plaintiff may rely on the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Borja-Valdes v. City and Cty. of San Francisco*, No. 3:14-cv-04168-CRB, 2015 U.S. Dist. LEXIS 125252, 2015 WL 5522287, at *3 (N.D. Cal. Sept. 18, 2015).  To establish a prima facie case of discrimination per *McDonnell Douglas*, a plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class

///

5

Defendant's Notice of Motion and Motion to Dismiss
the Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.          Case No. 4:24-cv-03415-HSG

1    were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123

2    (9th Cir. 2000).

3         Plaintiff has failed to sufficiently plead the final two elements of her prima facie case of

4    discrimination.  An adverse employment action is one that "materially affects the compensation,

5    terms, conditions, or privileges of employment." *Campbell v. State Dep't of Educ.*, 892 F.3d 1005,

6    1015 (9th Cir. 2018) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

7    Adverse employment actions typically include transfers of job duties, negative performance

8    evaluations, unfavorable job references, denial of salary increases, or a more burdensome work

9    schedule.  *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (transfer of duties and

10   negative performance evaluations); *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997)

11   (unfavorable job reference); *Strothers v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th

12   Cir. 1996) (more burdensome work schedules); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir.

13   2000) (elimination of a flexible start-time policy).

14        Plaintiff specifically alleges two instances forming the basis of her Title VII claim: (1) the

15   Instagram Post and the outcome of Plaintiff's resulting complaint; and (2) the investigation of

16   complaints of harassment against Plaintiff and the consequent finding of policy violations.  Neither

17   of these amount to an adverse employment action because they did not have a material effect on

18   Plaintiff's employment.  Plaintiff remains a tenured professor with all of the rights and privileges

19   of her position.

20        Specifically, the Instagram post was not derogatory and, even if it was, it was neither

21   excessive nor opprobrious.  *See Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1051

22   (9th Cir. 1987) ("[D]erogatory ethnic statements, unless excessive and opprobrious, are

23   insufficient to establish a cause of national origin discrimination.").  Moreover, CCA investigated

24   Plaintiff's complaint and removed the post.  Neither the post itself nor CCA's response to it can

25   serve as an adverse employment action.  Likewise, the requirement that Plaintiff retake Diversity,

26   Equity, and Inclusion trainings was not an adverse employment action because it had no material

27   effect on Plaintiff's employment.  *See James v. C-Tran*, 130 Fed. Appx. 156, 157 (9th Cir. 2005)

28   (holding that a performance improvement plan is not an adverse employment action).

Plaintiff's remaining allegations (i.e., those stated in Section II.D., *supra*) also fail as adverse employment actions because they were not actions taken by CCA against Plaintiff, or they lack basic and essential facts, such as when alleged events occurred and whether CCA was aware of them. These vague and conclusory allegations are insufficient to withstand a motion to dismiss. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff also fails to plead that there are any similarly situated non-Jewish employees who were treated more favorably than Plaintiff. To satisfy this element, Plaintiff "must identify employees outside her [religion] and [ethnicity] who were similarly situated to her 'in all material respects' but who were given preferential treatment; they must 'have similar jobs and display similar conduct.'" *Campbell v. State Dep't of Educ.*, 892 F.3d 1005, 1015 (9th Cir. 2018) (quoting *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009)). Plaintiff has not identified even a single CCA employee for comparison. Although Plaintiff seems to suggest that the non-Jewish students who lodged a harassment complaint against her were treated more favorably, those students are not employees of CCA. Moreover, the complaints they lodged were substantively different from Plaintiff's: Plaintiff complained about the *content* of an Instagram post, whereas the students complained about the *manner* in which Plaintiff spoke to them. (*See* Compl. ¶ 92.) For these reasons, Plaintiff's Title VII disparate treatment claim must be dismissed without leave to amend.

### 2.  Hostile Work Environment

To state a claim of hostile work environment under Title VII, Plaintiff must allege (1) that she was subjected to verbal or physical conduct of a religious or ethnic nature; (2) the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Lee v. Foothill-De Anza Cmty. Coll. Dist.*, No. 23-cv-03418-PCP, 2024 U.S. Dist. LEXIS 83240, at *26-27 (N.D. Cal. May 7, 2024) (citing *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978-79 (9th Cir. 2023)). The third factor requires Plaintiff to plead that "her work environment was both subjectively and objectively hostile." *Dominquez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005).

In determining whether a plaintiff's allegations articulate a claim of hostile work

7

environment, courts evaluate the totality of the circumstances, including the frequency and severity of the conduct, whether it was physically threatening or humiliating, as well as the level of interference with the plaintiff's work performance.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminat[ion]."  *Faragher v City of Boca Raton*, 524 U.S. 775, 788 (1998).

Plaintiff specifically alleges four instances forming the basis of her hostile work environment claim: (1) the Instagram Post and the outcome of Plaintiff's resulting complaint; (2) the investigation of complaints of harassment against Plaintiff and the consequent finding of policy violations; (3) an alleged disparity in university responses to news events; and (4) a failure by CCA to assist Plaintiff with a Muslim student.  (Compl. ¶¶ 120, 135.)  Plaintiff has failed to plead that she was subjected to verbal conduct of a religious or ethnic nature in any of these circumstances.  The Instagram post does not address Judaism or Zionism.  Although it addresses Israel, Plaintiff does not plead that all Jews are Israeli or that she is Israeli.  It therefore cannot be concluded from the pleadings that the Instagram post addressed Plaintiff's religion, ancestry, or national origin.  Likewise, CCA's investigation of the students' complaints and consequent finding of policy violations was not "verbal conduct of a religious or ethnic nature."  There are no allegations that CCA representatives used religious or ethnic terms when undertaking the investigation or in issuing its findings to Plaintiff.  *See* Compl. Ex. N.  Finally, the alleged failure of CCA to respond to news events or to Plaintiff's alleged request for assistance with a Muslim student cannot form the basis of a claim requiring that Plaintiff be "subject to" verbal or physical conduct.

Plaintiff's other allegations are too vague to support her hostile work environment claim.  As noted above, she includes vague and undated incidents of alleged harassment of Jewish students "for not supporting [the] dominant ideology" (*id.* ¶¶ 9); vague and undated Jewish and non-Jewish student complaints regarding "antisemitic experiences" (*id.* ¶¶ 13-15, 76); an undated and unattributed comment during a meeting for which Plaintiff may not have been present (*id.* at ¶ 50); and a student complaint against another Jewish teacher, the outcome of which is not pleaded (*id.* at ¶¶ 94-95).  Based on these allegations, it is impossible to evaluate whether the alleged acts involved "verbal or physical conduct of a religious or ethnic nature," whether they were temporally

8

1  proximate, or whether they created an abusive working environment.

2          Finally, Plaintiff has failed to plead that the alleged conduct was sufficiently severe or

3  pervasive to alter the conditions of her employment and create an abusive working environment.

4  The alleged events are not temporally proximate and appear to be isolated and unrelated incidents.

5  Further, Plaintiff merely alleges that the "hostile environment makes it impossible even for a fully

6  tenured professor such as Dr. Fiss to be able to function as a scholar within CCA as a community

7  of scholars."  (Compl. ¶ 53.)  She does not state with specificity how the alleged events have

8  impacted her work performance.  This vague statement necessitates the dismissal of Plaintiff's

9  Title VII claim without leave to amend.

10          **B.     Plaintiff Fails to State a Title VI Claim.**

11                  **1.      Plaintiff Does Not Plead Essential Facts Relating to CCA's Financial**
                            **Assistance.**

12

13          To state a claim under Title VI, Plaintiff must allege that "the entity involved is receiving

14  federal financial assistance."  *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th

15  Cir. 1994).  Plaintiff must also allege that the primary objective of the Federal financial assistance

16  is to provide employment and that the funds went to discriminatory programs or activities.  42

17  U.S.C. § 2000d-3; *see also Temengil v. Trust Territory of the Pacific Islands*, 881 F.2d 647, 653

18  (9th Cir. 1989); *Gao v. Hawaii Dep't of the Attorney General*, No. 09-00478 DAE-BMK, 2010

19  U.S. Dist. LEXIS 2073 (D. Hawaii Jan. 12, 2010), aff'd 424 Fed. Appx 641, 2011 U.S. App.

20  LEXIS 6271 (9th Cir. 2011) (granting motion to dismiss on grounds that the allegation that federal

21  funds impacted the plaintiff's area of work was insufficient to state a claim); *Small v. Feather*

22  *River College*, No. 2:10-cv-3026-JAM-GGH, 2011 U.S. Dist. LEXIS 51579, at *25 (E.D. Cal.

23  May 2, 2011) (granting motion to dismiss for failure to state a Title VI claim due to the plaintiff's

24  failure to allege that the primary objective of the federal assistance was to provide employment).

25  Although Plaintiff alleges that CCA receives financial assistance (Compl. ¶ 147), she does not

26  allege the primary objective of that assistance is to provide employment or that the funds went to

27  discriminatory programs or activities.  The claim must therefore be dismissed.

28  ///

### 2.      Plaintiff Fails to Plead Direct Discrimination.

Plaintiff's Title VI claim also fails because she has not alleged that CCA intentionally discriminated against her.  *McDonnell Douglas* applies to Title VI disparate treatment claims.  *See Rashdan v. Giessberger*, 764 F.3d 1179, 1182 (9th Cir. 2014); *see also Mandel v. Bd. of Trs. of Cal. State Univ.*, No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871, at * 154 (N.D. Cal. Mar. 9, 2018).  As such, Plaintiff's Title VI claim fails for the same reasons as her Title VII disparate treatment claim.

### 3.      Plaintiff Fails to State a Hostile Environment Claim.

To establish a hostile work environment under Title VI, Plaintiff must plead that (1) there is a hostile environment based on her protected class; (2) that CCA had notice of the hostile environment; and (3) that it failed to respond adequately to redress the hostile environment.  *See Mandel,* No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871, at *48 (citing *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998)).  A hostile environment is one that is "so severe, pervasive, and objectively offensive, and that so detracts from the victims' educational experience, that the victims are effectively denied equal access to an institution's resources and opportunities."  *Id.* (quoting *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 652 (1999)).

Here, Plaintiff fails to plead a hostile environment for the same reasons noted with respect to her Title VII claim.  She has also failed to plead "deliberate indifference" by CCA.  The test for deliberate indifference is "whether a reasonable fact-finder could conclude that [CCA's] response was clearly unreasonable in light of the known circumstances."  *Id.*  To meet this high standard, there must, in essence, be an official decision not to remedy the violation and this decision must be clearly unreasonable."  *Id.* (quoting *Doe v. Willits Unified School Dist.*, 473 Fed. Appx. 775, 775-76 (9th Cir. 2012)).

By Plaintiff's own admissions, CCA has not been deliberately indifferent.  CCA issued a statement to its students and faculty on October 11, 2023, only four days after the attack by Hamas. Within its statement, CCA offered sincere sympathy for those affected, and recognized the impact the attack and ensuing political crisis would have on its students.  (Compl. Ex. E.)  It affirmed CCA's values as a diverse and interconnected learning community and offered resources for its

10

1    students.  Additionally, to address Plaintiff's concerns, Defendant removed the Instagram post and

2    investigated the matter thoroughly.  CCA took Plaintiff's concerns to heart and completed its due

3    diligence.  Similarly, Defendant investigated complaints of harassment brought against Plaintiff.

4    Its findings supported a determination that Plaintiff violated Defendant's harassment policy.  As

5    such, Defendant exacted reasonable and appropriate remedies in the form of additional DEI

6    training.  The remaining allegations are either too vague and conclusory to support the claim, or

7    they were not "clearly unreasonable in light of the known circumstances."

8        Finally, Plaintiff has failed to allege facts showing that she was denied "educational

9    benefits."  *See Mandel,* No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871, at *57.  Such

10   facts should include a "disparately hostile educational environment relative to a peer," being forced

11   to alter teaching arrangements, or other material, psychological, or physical impacts of the alleged

12   hostile environment.  *Id.*  Plaintiff has offered no such allegations and, as a result, her Title VI

13   claim must be dismissed without leave to amend.

14       **C.    Plaintiff Fails to State a Claim Under Education Code Section 220.**

15           **1.    Plaintiff Did Not Exhaust Her Administrative Remedies.**

16       California Education Code Section 262.3 states that "a person who alleges that he or she is

17   a victim of discrimination may not seek civil remedies pursuant to this section until at least 60

18   days have elapsed from the filing of an appeal to the State Department of Education . . . .  The

19   moratorium imposed by this subdivision . . . is applicable only if the local educational agency has

20   appropriately, and in a timely manner, apprised the complainant of his or her right to file a

21   complaint."  Cal. Educ. Code § 262.3(d); *see also Donovan v. Poway Unified School Dist.*, 167

22   Cal. App. 4th 567, 601 (2008) ("A complaint of discrimination must be filed with the local

23   educational agency 'not later than six months from the date the alleged discrimination occurred,

24   or the date the complainant first obtained knowledge of the facts of the alleged discrimination."

25   (quoting Cal. Code Regs. tit. 5, § 4630(b))).  Here, Plaintiff has failed to plead that she exhausted

26   her administrative remedies and, as a result, the claim must be dismissed.  *See R.N. v. Travis*

27   *Unified Sch. Dist.*, No. 2:20-cv-00562-KJM-JDP, 202 U.S. Dist. LEXIS 230624, at *32 (E.D. Cal.

28   Dec. 8, 2020).

## 2. CCA Is Not an "Educational Institution" Under Section 220.

Plaintiff alleges that Defendant violated Section 220 of the California Education Code. Compl. ¶ 172. Section 220 applies to "educational institution[s] that receive[], or benefit[] from, state financial assistance, or enroll[] pupils who receive state student financial aid." Cal. Educ. Code § 220. "Educational institution" is defined as "a public or private preschool, elementary, or secondary school or institution; the governing board of a school district; or any combination of school districts or counties recognized as the administrative agency for public elementary or secondary schools." Cal. Educ. Code § 210.3. CCA, a postsecondary "college focused on the training of artists and art scholars," is not an educational institution as defined by Section 210.3. Compl. ¶ 30. Moreover, Plaintiff does not plead that CCA receives state financial assistance or enrolls pupils who receive state student financial aid. As a result, the Court must dismiss the claim.

## 3. Plaintiff Has Not Plausibly Alleged Her Claim Under Section 220.

This claim must also be dismissed for the same reasons Plaintiff's Title VI claim fails. *See* Section IV.B., *supra*.

## D. Plaintiff Fails to State a Claim Under Government Code Section 12920.

Plaintiff also brings claims of disparate treatment and hostile work environment under California's Fair Employment and Housing Act ("FEHA"). Compl. ¶ 184. As an initial matter, Plaintiff's claim must be dismissed because she failed to exhaust her administrative remedies with the California Civil Rights Department. *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1090 (N.D. Cal. 2008); *Foroudi v. Aerospace Corp.* (2000) 57 Cal. App. 922, 1002 (finding that "[b]efore pursuing a civil action asserting a violation of the FEHA, an employee must file an administrative complaint with the DFEH and obtain a right-to-sure letter from the agency"); *Anicama v. Oracle Am., Inc.*, No. 23-cv-04640-EMC, 2024 U.S. Dist. LEXIS 124323 (N.D. Cal. July 15, 2024), at *12 ("A right to sue letter from the EEOC satisfied the exhaustion requirement only for the purposes of an action based on federal law such as Title VII, not for a state law action under FEHA.").

Plaintiff's claim also fails for substantive reasons. The elements of disparate treatment and hostile work environment claims are the same under FEHA as Title VII. *See Guz v. Bechtel Nat.*

12

1   *Inc.*, 24 Cal.4th 317, 354 (2000) (disparate treatment); *Lyle v. Warner Bros. Television Prods.*, 38

2   Cal. 4th 264, 278 (2006) (hostile work environment).  As a result, Plaintiff's FEHA claims fail for

3   the same reasons Plaintiff's Title VII claims fail.

4          Finally, Plaintiff's Complaint purports to bring this claim under the "California Labor

5   Code."  Compl. ¶ 184.  A complaint must give "fair notice" and "enable" the defendant "to defend

6   itself effectively."  *Starr v. Baca*, 653 F.3d 1202, 1216 (9th Cir. 2011).  A pleading cannot be "so

7   vague and ambiguous" that a defendant "cannot reasonably prepare a response."  Fed. R. Civ. P.

8   12(e).  Given that the Complaint fails to allege specific sections of the Labor Code, the claim must

9   be dismissed.

10         **E.     Plaintiff Fails to State a Breach of Contract Claim.**

11         In order to establish a prima facie claim for breach of contract, a plaintiff must establish

12  (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance;

13  (3) defendant's breach; and (4) resulting damages to the plaintiff.  *Nava v. VirtualBank*, No. 2:08-

14  CV-00069-FCD-KJM, 2008 U.S. Dist. LEXIS 72819, at *28 (E.D. Cal. July 16, 2008) (applying

15  California law).  To establish the existence of a contract, a plaintiff must prove that there are

16  (1) parties capable of contracting, (2) consent, (3) a lawful object, and (4) consideration.  Cal. Civ.

17  Code § 1550.  "Consideration consists of a benefit bestowed or a detriment suffered as bargained

18  for by the parties."  *O'Brien v. XPO CNW, Inc.*, 362 F.Supp.3d 778, 784 (N.D. Cal. 2018) (quoting

19  *A.J. Industries, Inc. v. Ver Halen*, 75 Cal.App.3d 751, 761 (1977)).

20         Here, Plaintiff's breach of contract claim is deficient because she failed to plead adequate

21  facts regarding the existence of a contract.  The alleged contract pleaded by Plaintiff consists of

22  nothing more than Defendant's policy on Discrimination and Unlawful Harassment.  However,

23  "[a] promise to conform to the law [FEHA] lacks consideration and is therefore unenforceable."

24  *Farmearl v. Storopack, Inc.*, No. C-04-02633 RMW, 2005 U.S. Dist. LEXIS 34293, at *30 (N.D.

25  Cal. Sep. 12, 2005).

26         Plaintiff's claim also fails because she failed to plead any compensable damages resulting

27  from the alleged breach.  Generally, emotional distress damages are not recoverable in a breach of

28  contract claim, except for in extreme and traumatic circumstances.  *Erlich v. Menezes*, 21 Cal.4th

13

543, 559 (1999); *see also Kately v. Wilkinson*, 148 Cal.App.3d 576 (1983) (awarding emotional distress in a fatal waterskiing accident); *Chelini v. Nieri*, 32 Cal. 2d 480 (1948) (awarding emotional distress for failure to adequately preserve a corpse); *Burgess v. Superior Ct.*, 2 Cal.4th 1064 (1992) (finding emotional distress was warranted when an infant was injured during childbirth). Here, Plaintiff has not pleaded any economic damages because she remains employed by Defendant at her same salary, and she has not been denied any raises or promotions. Although she alleges she suffered emotional distress damages, the events alleged do not amount to extreme and traumatic circumstances. Accordingly, Plaintiff's breach of contract claim is subject to dismissal without leave to amend.

## V.    CONCLUSION

For these reasons, the Court should dismiss Plaintiff's claims.

Dated:  August 8, 2024                                           JACKSON LEWIS P.C.


                                                    By:    /s/ Jessica C. Shafer
                                                           Angel R. Sevilla
                                                           Jessica C. Shafer
                                                           Julianna Bramwell
                                                           Attorneys for Defendant
                                                           CALIFORNIA COLLEGE OF THE ARTS

4864-4544-6612