1  Angel R. Sevilla (State Bar No. 239072)
2  Jessica C. Shafer (State Bar No. 297856)
   Julianna Bramwell (State Bar No. 238568)
3  JACKSON LEWIS P.C.
   50 California Street, 9th Floor
4  San Francisco, California 94111-4615
   Telephone:  (415) 394-9400
5  Facsimile:  (415) 394-9401
   E-mail:  Angel.Sevilla@jacksonlewis.com
6  E-mail:  Jessica.Shafer@jacksonlewis.com
7  E-mail:  Julianna.Bramwell@jacksonlewis.com

8  Attorneys for Defendant
   CALIFORNIA COLLEGE OF THE ARTS
9

10                    UNITED STATES DISTRICT COURT

11        NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

12

13  KAREN FISS,                          Case No. 4:24-cv-03415-HSG

14          Plaintiff,                   **DEFENDANT'S NOTICE OF MOTION
                                         AND MOTION TO DISMISS
15          v.                           PLAINTIFF'S FIRST AMENDED
                                         COMPLAINT PURSUANT TO RULE
16  CALIFORNIA COLLEGE OF THE ARTS,      12(B)(6) OF THE FEDERAL RULES OF
                                         CIVIL PROCEDURE**
17          Defendant.

18                                       Date:        December 5, 2024
                                         Time:        2:00 p.m.
19                                       Ctrm.:       2 – 4th Floor
                                         Judge:       Hon. Haywood S. Gilliam, Jr.,
20                                                    District Judge

21
                                         Complaint Filed:             06/06/2024
22                                       First Amended Complaint: 09/05/2024
                                         Trial Date:                  Not Set
23

24

25

26

27

28

                                    1

1   TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that on Thursday, December 5, 2024, at 2:00 p.m., or as soon

3   thereafter as the matter may be heard by the Honorable Haywood Gilliam in Courtroom 2, 4th Floor

4   of the above-referenced Court located at 1301 Clay Street, Oakland, California 94612, Defendant

5   California College of the Arts ("Defendant" or "CCA") will and hereby does move for an order

6   dismissing Plaintiff Karen Fiss's ("Plaintiff") First Amended Complaint with prejudice and

7   without leave to amend, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This

8   Motion is based on this Notice of Motion and Motion, the below Memorandum of Points and

9   Authorities, all papers on file, and any authority or argument presented in the reply and at any

10  hearing.

## STATEMENT OF RELIEF SOUGHT

12          Defendant seeks dismissal of all claims without leave to amend pursuant to Fed. R. Civ. P.

13  12(b)(6).

14  Dated:  October 15, 2024                         JACKSON LEWIS P.C.

16                                      By:     /s/ Jessica C. Shafer
17                                              Angel R. Sevilla
                                                Jessica C. Shafer
18                                              Julianna Bramwell
                                                Attorneys for Defendant
19                                              CALIFORNIA COLLEGE OF THE ARTS

20

21

22

23

24

25

26

27

28

Def's Notice of Motion and Motion to Dismiss Pl's First
Amended Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.        Case No. 4:24-cv-03415-HSG

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ......................................................................................... 1

II.    STATEMENT OF ALLEGED FACTS ......................................................... 1

    A.     CCA's Commitment to Civil Rights ................................................ 1

    B.     CCA's Response to Plaintiff's Complaint About the Content of an Instagram Post. ...................................................................................................... 2

    C.     CCA's Response to Student Complaints of Harassment By Plaintiff .................... 3

    D.     Plaintiff's Other Vague Allegations of Antisemitism at CCA. ................................ 4

III.   LEGAL STANDARD ................................................................................... 5

IV.    ARGUMENT ................................................................................................ 5

    A.     Plaintiff Fails to State a Title VII Claim. .................................................... 5

        1.     Disparate Treatment ....................................................................... 5

        2.     Hostile Work Environment .......................................................... 7

    B.     Plaintiff Fails to State a Title VI Claim. ..................................................... 9

        1.     Plaintiff Does Not Plead Essential Facts Relating to CCA's Financial Assistance. ................................................................................... 9

        2.     Plaintiff Fails to Plead Direct Discrimination. ........................................... 10

        3.     Plaintiff Fails to State a Hostile Environment Claim. ............................... 10

    C.     Plaintiff Fails to State a Claim Under Education Code Section 66270 ................. 12

        1.     Plaintiff Does Not Have Standing Under Education Code Section 66270. ...................................................................................................... 12

        2.     Plaintiff Does Not Sufficiently Plead Discrimination. .............................. 12

    D.     Plaintiff Fails to State a Claim Under Government Code Section 12920. ............. 13

    E.     Plaintiff Fails to State a Breach of Contract Claim. ............................................. 13

V.     CONCLUSION ........................................................................................... 14

i

Def's Notice of Motion and Motion to Dismiss Pl's First
Amended Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.     Case No. 4:24-cv-03415-HSG

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Ahern v. Bd. Of Educ. Of City of Chicago*,
5     133 F.3d 975 (7th Cir. 1998).................................................................................................. 9

6

*Anicama v. Oracle Am., Inc.*,
    No. 23-cv-04640-EMC, 2024 U.S. Dist. LEXIS 124323 (N.D. Cal. July 15,
7     2024) .................................................................................................................................. 13

8

*Ashcroft v. Iqbal*,
9     556 U.S. 662 (2009) ........................................................................................................... 5

10

*Borja-Valdes v. City and Cty. of San Francisco*,
    No. 3:14-cv-04168-CRB, 2015 U.S. Dist. LEXIS 125252, 2015 WL 5522287
11     (N.D. Cal. Sept. 18, 2015).................................................................................................. 5

12

*Campbell v. State Dep't of Educ.*,
13     892 F.3d 1005 (9th Cir. 2018)......................................................................................... 6, 7

14

*Carbonnel v. Cty. Of San Diego*,
    2017 U.S. Dist. LEXIS 185487, *14-15 ............................................................................ 9

15

*Chuang v. Univ. of Cal. Davis, Bd. of Trs.*,
16     225 F.3d 1115 (9th Cir. 2000)............................................................................................ 6

17

*Davis v. Monroe County Bd. of Educ.*,
18     526 U.S. 629 (1999) ......................................................................................................... 11

19

*Davis v. Team Elec. Co.*,
    520 F.3d 1080 (9th Cir. 2008) ........................................................................................... 6

20

*Doe v. Willits Unified School Dist.*,
21     473 Fed. Appx. 775 (9th Cir. 2012) ................................................................................ 11

22

*Dominquez-Curry v. Nev. Transp. Dep't*,
    424 F.3d 1027 (9th Cir. 2005)............................................................................................ 8
23

24

*Faragher v City of Boca Raton*,
    524 U.S. 775 (1998)............................................................................................................ 8

25

*Farmearl v. Storopack, Inc.*,
26     No. C-04-02633 RMW, 2005 U.S. Dist. LEXIS 34293 (N.D. Cal. Sep. 12,
    2005) .................................................................................................................................. 14

27

*Fobbs v. Holy Cross Health Sys. Corp.*,
28     29 F.3d 1439 (9th Cir. 1994)............................................................................................. 9

Def's Notice of Motion and Motion to Dismiss Pl's First
Amended Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.     Case No. 4:24-cv-03415-HSG

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993) ........................................................................................ 8

*Hashimoto v. Dalton*,
    118 F.3d 671 (9th Cir. 1997) ........................................................................ 6

*Ivey v. Board of Regents*,
    673 F.2d 266 (9th Cir. 1982) ........................................................................ 7

*James v. C-Tran*,
    130 Fed. Appx. 156 (9th Cir. 2005) ............................................................. 7

*Lee v. Foothill-De Anza Cmty. Coll. Dist.*,
    No. 23-cv-03418-PCP, 2024 U.S. Dist. LEXIS 83240 (N.D. Cal. May 7,
    2024) ............................................................................................................. 8

*Leland v. City & Cnty. of San Francisco*,
    576 F. Supp. 2d 1079 (N.D. Cal. 2008) ...................................................... 13

*Lyons v. England*,
    307 F.3d 1092 (9th Cir. 2002) ...................................................................... 5

*Mandel v. Bd. of Trs. of Cal. State Univ.*,
    No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871 (N.D. Cal. Mar. 9,
    2018) ............................................................................................... 10, 11, 12

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ............................................................................ 5, 6, 10

*Monteiro v. Tempe Union High Sch. Dist.*,
    158 F.3d 1022 (9th Cir. 1998) .................................................................... 11

*Nava v. VirtualBank*,
    No. 2:08-CV-00069-FCD-KJM, 2008 U.S. Dist. LEXIS 72819 (E.D. Cal. July
    16, 2008) ..................................................................................................... 13

*Nicholson v. Hyannis Air Serv., Inc.*,
    580 F.3d 1116 (9th Cir. 2009) ...................................................................... 7

*O'Brien v. XPO CNW, Inc.*,
    362 F.Supp.3d 778 (N.D. Cal. 2018) .......................................................... 14

*Rashdan v. Giessberger*,
    764 F.3d 1179 (9th Cir. 2014) .................................................................... 10

*Ray v. Henderson*,
    217 F.3d 1234 (9th Cir. 2000) ...................................................................... 6

*Sharp v. S&S Activewear, L.L.C.*,
    69 F.4th 974 (9th Cir. 2023) ......................................................................... 8

iii

*Small v. Feather River College*,
    No. 2:10-cv-3026-JAM-GGH, 2011 U.S. Dist. LEXIS 51579 (E.D. Cal. May
    2, 2011) ................................................................................................................... 10

*Stallcop v. Kaiser Foundation Hospitals*,
    820 F.2d 1044 (9th Cir. 1987)................................................................................... 6

*Starr v. Baca*,
    653 F.3d 1202 (9th Cir. 2011).................................................................................. 13

*Strothers v. S. Cal. Permanente Med. Group*,
    79 F.3d 859 (9th Cir. 1996)....................................................................................... 6

*Temengil v. Trust Territory of the Pacific Islands*,
    881 F.2d 647 (9th Cir. 1989).................................................................................... 10

*Yartzoff v. Thomas*,
    809 F.2d 1371 (9th Cir. 1987)................................................................................... 6

**California Cases**

*A.J. Industries, Inc. v. Ver Halen*,
    75 Cal.App.3d 751 (1977) ...................................................................................... 14

*Burgess v. Superior Ct.*,
    2 Cal.4th 1064 (1992) ............................................................................................. 14

*Chelini v. Nieri*,
    32 Cal.2d 480 (1948) .............................................................................................. 14

*Erlich v. Menezes*,
    21 Cal.4th 543 (1999) ............................................................................................. 14

*Foroudi v. Aerospace Corp.*,
    57 Cal. App. 922 (2000)........................................................................................... 13

*Gao v. Hawaii Dep't of the Attorney General*,
    No. 09-00478 DAE-BMK, 2010 U.S. Dist. LEXIS 2073 (D. Hawaii Jan. 12,
    2010) ....................................................................................................................... 10

*Guz v. Bechtel Nat. Inc.*,
    24 Cal.4th 317 (2000) ............................................................................................. 13

*Kately v. Wilkinson*,
    148 Cal.App.3d 576 (1983)..................................................................................... 14

*Lyle v. Warner Bros. Television Prods.*,
    38 Cal. 4th 264 (2006) ............................................................................................ 13

iv

**Federal Statutes**

42 U.S.C.
    § 2000d-3 ................................................................................................ 10
    § 2000e-2(a) ............................................................................................. 5

Fed. R. Civ. P.
    rule 12(e) ................................................................................................ 13
    rule 12(b)(6) ........................................................................................... 5

The Civil Rights Act of 1964
    Title VI ................................................................................. 9, 10, 12
    Title VII ............................................................................... *passim*

**California Statutes**

Cal. Civ. Code
    § 1550 ..................................................................................................... 14

Cal. Educ. Code
    § 66252 ................................................................................................... 12
    § 66252(g) ............................................................................................. 12
    § 66270 ................................................................................................... 12

Cal. Gov't Code
    § 12920 ................................................................................................... 13

California Fair Employment and Housing Act (FEHA) ....................... 13, 14

California Labor Code ............................................................................... 13

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3    The core mission of higher education is to cultivate an environment where members of the

4 academic community discuss diverse perspectives on myriad topics.  In line with this mission,

5 California College of the Arts ("CCA"), a private arts college located in San Francisco, California,

6 encourages its students and faculty to engage in open and respectful dialogue about current

7 geopolitical events and their effects.  CCA empowers all individuals to partake in such discourse

8 without fear of discrimination or harassment.

9    Especially regarding complex and controversial issues, CCA expects that faculty members

10 will facilitate the free expression of its students in a respectful and inclusive manner.  Plaintiff,

11 however, sought to stifle this expression and to use her position to impose her views on others in

12 direct violation of CCA's reasonable policies.  Under the pretense of anti-discrimination laws,

13 Plaintiff's lawsuit attempts to curtail the free speech of CCA's academic community, a slippery

14 slope the Court should elect not to tread.

15    CCA filed a Motion to Dismiss Plaintiff's Complaint on August 8, 2024.  Doc. No. 19.

16 Plaintiff had the opportunity to address those deficiencies in the First Amended Complaint

17 ("FAC") she filed on September 5, 2024.  Doc. No. 30.  But, as set forth herein, Plaintiff's FAC

18 has failed to cure the numerous fatal deficiencies in Plaintiff's claims.  For these reasons and those

19 discussed below, the Court should dismiss Plaintiff's First Amended Complaint without leave to

20 amend.

21

## II.   STATEMENT OF ALLEGED FACTS[1]

22

### A.    CCA's Commitment to Civil Rights

23    CCA stands firmly against antisemitism and has long been committed to the equal

24 treatment of all persons regardless of race, color, national origin, ancestry, and religion.  *See* FAC

25 ¶¶ 204-205.  CCA's written policy prohibits harassment and discrimination on the basis of these

26 and other protected characteristics.  *Id.*  CCA provides a reporting procedure for alleged violations

27
28
---
[1] Defendant repeats certain allegations from Plaintiff's First Amended Complaint ("FAC"). Although the allegations are materially false, incomplete, or misleading in numerous respects, Defendant treats these allegations as true solely for the purpose of this Motion to Dismiss.

1

1    of this policy to its employees.  *Id.* ¶ 206.  CCA investigates and attempts to resolve any and all

2    such employee complaints.  *Id.* ¶¶ 65-69.

3         CCA also maintains that free expression is indispensable to the transmission of knowledge

4    and to the fulfillment of its academic enterprise.  *Id.* Ex. H.  CCA promotes, through policy and

5    practice, productive and respectful discourse within its diverse community composed of students,

6    staff, and faculty.  *Id.*  CCA strives, in all contexts, to balance these rights in an equitable and

7    nondiscriminatory manner.  *Id.*

8    **B.      CCA's Response to Plaintiff's Complaint About the Content of an Instagram**
             **Post.**
9

10        Plaintiff alleges that on October 7, 2023, members of Hamas perpetrated a brutal terrorist

11   attack on Israel and its citizens.  *Id.* ¶¶ 57-58.  Shortly thereafter, on October 10, 2023, CCA's

12   president issued a "[s]tatement of support and resources" about the "horrific and devastating events

13   that unfolded over the weekend in Israel and Gaza."  *Id.* ¶ 64, Ex. E.  The statement recognized

14   that "[f]aculty may be struggling with how to address this moment in their classrooms and studios"

15   and that "[s]tudents may be experiencing anxiety in a violent and uncertain world."  *Id.* Ex. E.  It

16   also presented community support resources for students and faculty alike.  *Id.*

17        On October 11, 2023, an Instagram account known as "cca_critical_ethnic_studies" posted

18   a photo of a protest in which a protestor holds a sign stating that "Decolonization Is Not a Dinner

19   Party."  *Id.* ¶ 60, Ex. F.  The accompanying caption stated, "[o]ur program has a stellar record of

20   teaching the historical and contemporary context of Israel's colonial legacy in Palestine."  *Id.*

21   Ex. F.  It stated further, "[w]e stand in solidarity with all of our community members who strive

22   for a peaceful world and mourn for all of the lives lost."  *Id.*  The post was "liked" by at least 52

23   Instagram account holders, many of whom were not affiliated with CCA.  *Id.*

24        Ten days later, on October 20, 2023, Plaintiff complained to CCA about the Instagram

25   post.  *Id.* ¶ 65.  In her First Amended Complaint ("FAC"), Plaintiff stated that she "was not aware

26   of [the Instagram post] at first" until a non-Jewish colleague brought it to her attention.  *Id.* Ex. G.

27   Maira Lazdins, CCA's Vice President of Human Resources, responded to Plaintiff that CCA

28   rejects "hate speech, antisemitism, and Islamophobia," but recognizes that "diverging opinions on

2

Def's Notice of Motion and Motion to Dismiss Pl's First
Amended Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.                    4:24-cv-03415-HSG

substantive issues can coexist." *Id.* ¶ 66, Ex. H.  Lazdins also thanked Plaintiff for sharing her perspective.  *Id.*, Ex. H.

CCA thereafter commenced an investigation of Plaintiff's complaint by way of an outside investigator.  *Id.* ¶ 68.  CCA removed the Instagram post at the start of the investigation, a decision that became permanent. *Id.* ¶ 68; *see also id.* Ex. J.  Plaintiff spoke with the investigator on January 2, 2024.  *Id.*  On February 1, 2024, CCA notified Plaintiff that it had concluded its investigation, finding that the Instagram post did not violate any of CCA's policies.  *Id.* ¶ 69.  CCA assured Plaintiff that it would take "additional proactive steps to promote dialogue, and to offer additional support, to ensure that the CCA community can continue to engage in open, respectful discourse." *Id.* Ex. J.

**C.     CCA's Response to Student Complaints of Harassment By Plaintiff**

On November 16, 2023, CCA's Director of Human Resources, Suzanne Guevarra, contacted Plaintiff to inform her that CCA had received two student complaints about her.  *Id.* ¶¶ 91-92, Ex. M.  The first student complaint alleged that Plaintiff sent "inappropriate" emails to the "google group" of Havurah, a Jewish organization.  *Id.* Ex. M.  The second student complaint alleged that Plaintiff had acted in a harassing and discriminatory manner.  *Id.*

Regarding the latter incident, Plaintiff alleges that she encountered students affiliated with a group known as Students for Justice in Palestine ("SJP") in the nave on CCA's campus.  *Id.* ¶ 79. Plaintiff observed that the students were standing at a table, behind which a handmade poster was hung.  *Id.* ¶ 81.  Plaintiff alleges that the poster "called for the 'liberation of Palestine' 'From the River to the Sea'" and displayed "a map of Israel with the colors of the Palestinian flag over the entire country".  *Id.*  Plaintiff admits that she took a photo of the students in front of the sign.  *Id.* Plaintiff thereafter engaged in a conversation with the students.  *Id.* ¶¶ 84-85.  One of the students informed Plaintiff that she was from Kuwait.  *Id.* ¶ 86.  In response, Plaintiff "brought up the challenges Palestinians faced in Kuwait, citing the deportation of over 300,000 Palestinians from Kuwait in 1991."  *Id.*  Plaintiff also asked the students "where they got their news from" and stated that she "tries to read news and academic articles from a wide range of political viewpoints to ensure that she doesn't end up in an echo-chamber".  *Id.* ¶¶ 86-87.  A student allegedly responded

3

that she "liked her echo chamber." *Id.* ¶ 88.  Plaintiff then walked away from the conversation. *Id.* at 88.

CCA investigated these student complaints, which investigation included interviews of Plaintiff, the student that lodged the complaint regarding inappropriate emails, and the two student witnesses to the incident in the nave. *Id.* ¶¶ 96-97.  As to the first student complaint, CCA's Human Resources department found that Plaintiff had not violated any policies in sending emails to the Havurah group.  *Id.* Ex. N.  As to the second student complaint, CCA's investigation yielded the following findings regarding Plaintiff's conduct:

- Plaintiff "took photographs of the students and of their table and made the students feel threatened" (*id.* Ex. N);

- "The nature and tone of the statements" by Plaintiff "caused the students to reasonably believe" that Plaintiff had used her "positional power as a Professor" to gain the agreement of the students (*id.*);

- When Plaintiff learned that one of the students with whom she spoke was from Kuwait, Plaintiff "began explaining the history of [the student's] country to her" (*id.* ¶ 104);

- Plaintiff "told the students that they 'live in an echo chamber'" (*id.* Ex. N); and

- The students reported that the interaction was "aggressive, inappropriate, combative, heated and disrespectful" (*id.* Ex. N).

CCA ultimately concluded that some of Plaintiff's conduct violated CCA's policies, including its antiharassment and professional ethics policies.  *Id.* ¶ 102, Ex. N.  CCA therefore required Plaintiff to delete any photos she took of the students, to take trainings titled "Supporting Diversity, Equity, Inclusion, and Belonging" and "Preventing Harassment & Discrimination," and to review and sign copies of the policies she was found to have violated.  *Id.* ¶ 105, Ex. N.

### D.     Plaintiff's Other Vague Allegations of Antisemitism at CCA.

Plaintiff points to a handful of other events to support her claims of discrimination and hostile work environment by CCA.  Those events include vague and undated incidents of alleged harassment of Jewish students "for not supporting [the] dominant ideology" (*id.* ¶¶ 9); vague and undated Jewish and non-Jewish student complaints regarding "antisemitic experiences" (*id.* ¶¶ 13-15, 76); an undated and unattributed comment during a meeting (*id.* at ¶ 50); and a student complaint against another Jewish teacher, the outcome of which is not pleaded (*id.* at ¶¶ 94-95).

4

They also include alleged inaction by CCA, including allegedly failing to issue public statements regarding "violence done to Jews" (*id.* at ¶ 38) (despite the fact that CCA issued a statement regarding the October 7, 2023, terrorist attack only days later (*id.* ¶ 41)) and failing to assist Plaintiff with a "Muslim student in her class" who "ignored the assignment" and sought to focus on Al-Aqsa Mosque for her final project (*id.* ¶ 120).

## III.    LEGAL STANDARD

This Court should grant a Rule 12(b)(6) motion when the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court should disregard conclusory factual allegations and "draw on its judicial experience and common sense" to determine whether a claim is plausible.  *Id.* at 678-79.

## IV.    ARGUMENT

### A.    Plaintiff Fails to State a Title VII Claim.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges" or "to limit, segregate, or classify [] employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee" because of employment because of her religion or national origin.  42 U.S.C. § 2000e-2(a).  Plaintiff alleges that, in violation of Title VII, CCA subjected her to intentional discrimination and a hostile work environment on the basis of her religion and ethnic origin.  FAC ¶¶ 148, 150.

### 1.    Disparate Treatment

Although Plaintiff's Title VII claim is titled "Hostile Work Environment," a disparate treatment claim is implied.  To establish a *prima facie* case of disparate treatment, a plaintiff must provide evidence giving rise to an inference of unlawful discrimination.  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).  A plaintiff may provide direct or circumstantial evidence to establish a *prima facie* case for unlawful discrimination, but if direct evidence is not available, a plaintiff may rely on the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Borja-Valdes v. City and Cty. of San Francisco*, No. 3:14-cv-04168-

5

1   CRB, 2015 U.S. Dist. LEXIS 125252, 2015 WL 5522287, at *3 (N.D. Cal. Sept. 18, 2015).  To

2   establish a prima facie case of discrimination per *McDonnell Douglas*, a plaintiff must show that

3   (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to

4   an adverse employment action; and (4) similarly situated individuals outside her protected class

5   were treated more favorably."  *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123

6   (9th Cir. 2000).

7           Plaintiff's FAC still fails to sufficiently plead the final two elements of her *prima facie* case

8   of discrimination.  An adverse employment action is one that "materially affects the compensation,

9   terms, conditions, or privileges of employment."  *Campbell v. State Dep't of Educ.*, 892 F.3d 1005,

10   1015 (9th Cir. 2018) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

11   Adverse employment actions typically include transfers of job duties, negative performance

12   evaluations, unfavorable job references, denial of salary increases, or a more burdensome work

13   schedule.  *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (transfer of duties and

14   negative performance evaluations); *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997)

15   (unfavorable job reference); *Strothers v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th

16   Cir. 1996) (more burdensome work schedules); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir.

17   2000) (elimination of a flexible start-time policy).

18           Plaintiff specifically alleges two instances forming the basis of her Title VII claim: (1) the

19   Instagram Post and the outcome of Plaintiff's resulting complaint; and (2) the investigation of

20   complaints of harassment against Plaintiff and the consequent finding of policy violations.  Neither

21   of these amount to an adverse employment action because they did not have a material effect on

22   Plaintiff's employment.  Plaintiff remains a tenured professor with all of the rights and privileges

23   of her position.  FAC ¶ 26.

24           Specifically, the Instagram post was not derogatory and, even if it was, it was neither

25   excessive nor opprobrious.  *See Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1051

26   (9th Cir. 1987) ("[D]erogatory ethnic statements, unless excessive and opprobrious, are

27   insufficient to establish a cause of national origin discrimination.").  Moreover, CCA investigated

28   Plaintiff's complaint and removed the post.  Neither the post itself nor CCA's response to it can

6

1  serve as an adverse employment action.  Likewise, the requirement that Plaintiff retake Diversity,

2  Equity, and Inclusion trainings was not an adverse employment action because it had no material

3  effect on Plaintiff's employment.  *See James v. C-Tran*, 130 Fed. Appx. 156, 157 (9th Cir. 2005)

4  (holding that a performance improvement plan is not an adverse employment action).

5      Plaintiff's remaining allegations (*i.e.*, alleged discriminatory actions against "students" as

6  stated in Section II.D., *supra*) also fail as adverse employment actions because, even if the Court

7  assumes them to be true, they were not actions taken by CCA against Plaintiff, or they lack basic

8  and essential facts, such as when alleged events occurred and whether CCA was aware of them.

9  These vague and conclusory allegations are insufficient to withstand a motion to dismiss.  *See Ivey*

10  *v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Plaintiff has no standing to raise these

11  alleged claims.

12      Plaintiff also fails to plead that there are any similarly situated non-Jewish employees who

13  were treated more favorably than Plaintiff.  To satisfy this element, Plaintiff "must identify

14  employees outside her [religion] and [ethnicity] who were similarly situated to her 'in all material

15  respects' but who were given preferential treatment; they must 'have similar jobs and display

16  similar conduct.'"  *Campbell v. State Dep't of Educ.*, 892 F.3d 1005, 1015 (9th Cir. 2018) (quoting

17  *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009)).  Plaintiff has not

18  identified even a single CCA employee for comparison.  Although Plaintiff seems to suggest that

19  the non-Jewish students who lodged a harassment complaint against her were treated more

20  favorably, those students are not employees of CCA.  Moreover, the complaints they lodged were

21  substantively different from Plaintiff's: Plaintiff complained about the *content* of an Instagram

22  post, whereas the students complained about the *manner* in which Plaintiff spoke to them.  (*See*

23  FAC ¶ 92.)  For these reasons, Plaintiff's Title VII disparate treatment claim must be dismissed

24  without leave to amend.

25      **2.      Hostile Work Environment**

26      To state a claim of hostile work environment under Title VII, Plaintiff must allege (1) that

27  she was subjected to verbal or physical conduct of a religious or ethnic nature; (2) the conduct was

28  unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of

7

1   her employment and create an abusive working environment.  *Lee v. Foothill-De Anza Cmty. Coll.*

2   *Dist.*, No. 23-cv-03418-PCP, 2024 U.S. Dist. LEXIS 83240, at *26-27 (N.D. Cal. May 7, 2024)

3   (citing *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978-79 (9th Cir. 2023)).  The third factor

4   requires Plaintiff to plead that "her work environment was both subjectively and objectively

5   hostile."  *Dominquez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005).

6       In determining whether a plaintiff's allegations articulate a claim of hostile work

7   environment, courts evaluate the totality of the circumstances, including the frequency and severity

8   of the conduct, whether it was physically threatening or humiliating, as well as the level of

9   interference with the plaintiff's work performance.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23

10  (1993).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)

11  will not amount to discriminat[ion]."  *Faragher v City of Boca Raton*, 524 U.S. 775, 788 (1998).

12      Plaintiff specifically alleges four instances forming the basis of her hostile work

13  environment claim:  (1) the Instagram Post and the outcome of Plaintiff's resulting complaint;

14  (2) the investigation of complaints of harassment against Plaintiff and the consequent finding of

15  policy violations; (3) an alleged disparity in university responses to news events; and (4) a failure

16  by CCA to assist Plaintiff with a Muslim student.  (FAC ¶¶ 120, 149.)  Plaintiff has failed to plead

17  that she was subjected to verbal conduct of a religious or ethnic nature in any of these

18  circumstances.  The Instagram post does not address Judaism or Zionism.  Although it addresses

19  Israel, Plaintiff does not plead that all Jews are Israeli or that she is Israeli.  It therefore cannot be

20  concluded from the pleadings that the Instagram post addressed Plaintiff's religion, ancestry, or

21  national origin.  Moreover, there is no dispute that CCA removed the Instagram post immediately

22  after Plaintiff complained, a decision that became permanent.  *Id.* ¶ 68; Ex. J.

23      Likewise, CCA's investigation of the students' complaints and consequent finding of

24  policy violations was not "verbal conduct of a religious or ethnic nature."  There are no allegations

25  that CCA representatives used religious or ethnic terms when undertaking the investigation or in

26  issuing its findings to Plaintiff.  *See* FAC Ex. N.  Finally, the alleged failure of CCA to respond to

27  news events or to Plaintiff's alleged request for assistance with a Muslim student cannot form the

28  basis of a claim requiring that Plaintiff be "subject to" verbal or physical conduct.

Def's Notice of Motion and Motion to Dismiss Pl's First
Amended Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.                    4:24-cv-03415-HSG

Plaintiff's other allegations are too vague to support her hostile work environment claim. As noted above, she includes vague and undated incidents of alleged harassment of Jewish students "for not supporting [the] dominant ideology" (*id.* ¶¶ 9); vague and undated Jewish and non-Jewish student complaints regarding "antisemitic experiences" (*id.* ¶¶ 13-15, 76); an undated and unattributed comment during a meeting for which Plaintiff may not have been present (*id.* at ¶ 50); and a student complaint against another Jewish teacher, the outcome of which is not pleaded (*id.* at ¶¶ 94-95).   Based on these allegations, it is impossible to evaluate whether the alleged acts involved "verbal or physical conduct of a religious or ethnic nature," whether they were temporally proximate, or whether they created an abusive working environment.   And, as with Plaintiff's discrimination claim, Plaintiff has no standing to assert these alleged acts of "harassment" towards CCA's students.

Finally, Plaintiff has failed to plead that the alleged conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. The alleged events are not temporally proximate and appear to be isolated and unrelated incidents. Further, Plaintiff merely alleges that the "hostile environment makes it impossible even for a fully tenured professor such as Dr. Fiss to be able to function as a scholar within CCA as a community of scholars." (FAC ¶ 53.) She does not state with specificity how the alleged events have impacted her work performance.   This vague statement necessitates the dismissal of Plaintiff's Title VII claim without leave to amend.

**B.**   **Plaintiff Fails to State a Title VI Claim.**

**1.**   **Plaintiff Does Not Plead Essential Facts Relating to CCA's Financial Assistance.**

To state a claim under Title VI, Plaintiff must allege that "the entity involved is receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994).   However, Title VI has limited applicability in the employment sector. *Carbonnel v. Cty. Of San Diego*, 2017 U.S. Dist. LEXIS 185487, *14-15, citing *Ahern v. Bd. Of Educ. Of City of Chicago*, 133 F.3d 975, 978 (7th Cir. 1998).   Plaintiff must also allege that the primary objective of the Federal financial assistance is to provide employment and that the funds went to

9

1    discriminatory programs or activities.  42 U.S.C. § 2000d-3 ("Nothing contained in this subchapter

2    shall be construed to authorize action under this subchapter by any department or agency with

3    respect to any employment practice of any employer . . . except where a primary objective of the

4    Federal financial assistance is to provide employment"); *see also Temengil v. Trust Territory of*

5    *the Pacific Islands*, 881 F.2d 647, 653 (9th Cir. 1989); *Gao v. Hawaii Dep't of the Attorney*

6    *General*, No. 09-00478 DAE-BMK, 2010 U.S. Dist. LEXIS 2073 (D. Hawaii Jan. 12, 2010), aff'd

7    424 Fed. Appx 641, 2011 U.S. App. LEXIS 6271 (9th Cir. 2011) (granting motion to dismiss on

8    grounds that the allegation that federal funds impacted the plaintiff's area of work was insufficient

9    to state a claim); *Small v. Feather River College*, No. 2:10-cv-3026-JAM-GGH, 2011 U.S. Dist.

10   LEXIS 51579, at *25 (E.D. Cal. May 2, 2011) (granting motion to dismiss for failure to state a

11   Title VI claim due to the plaintiff's failure to allege that the primary objective of the federal

12   assistance was to provide employment).

13   Although Plaintiff alleges that CCA receives financial assistance (FAC ¶ 187), she does

14   not allege the primary objective of that assistance is to provide employment or that the funds went

15   to discriminatory programs or activities.  Indeed, Plaintiff only alleges that CCA "receives, or

16   benefits from, state financial assistance and/or enrolls students who receive state student financial

17   aid." (*id.*)  Plaintiff fails to allege the primary objective of those funds. Accordingly, the claim

18   must be dismissed.

19                    **2.       Plaintiff Fails to Plead Direct Discrimination.**

20   Plaintiff's Title VI claim also fails because she has not alleged that CCA intentionally

21   discriminated against her.  *McDonnell Douglas* applies to Title VI disparate treatment claims.  *See*

22   *Rashdan v. Giessberger*, 764 F.3d 1179, 1182 (9th Cir. 2014); *see also Mandel v. Bd. of Trs. of*

23   *Cal. State Univ.*, No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871, at * 154 (N.D. Cal.

24   Mar. 9, 2018).  As such, Plaintiff's Title VI claim fails for the same reasons as her Title VII

25   disparate treatment claim.

26                    **3.       Plaintiff Fails to State a Hostile Environment Claim.**

27   To establish a hostile work environment under Title VI, Plaintiff must plead that (1) there

28   is a hostile environment based on her protected class; (2) that CCA had notice of the hostile

10

environment; and (3) that it failed to respond adequately to redress the hostile environment.  *See Mandel,* No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871, at *48 (citing *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998)).  A hostile environment is one that is "so severe, pervasive, and objectively offensive, and that so detracts from the victims' educational experience, that the victims are effectively denied equal access to an institution's resources and opportunities." *Id.* (quoting *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 652 (1999)).

Here, Plaintiff fails to plead a hostile environment for the same reasons noted with respect to her Title VII claim.  She has also failed to plead "deliberate indifference" by CCA.  The test for deliberate indifference is "whether a reasonable fact-finder could conclude that [CCA's] response was clearly unreasonable in light of the known circumstances." *Id.*  To meet this high standard, there must, in essence, be an official decision not to remedy the violation and this decision must be clearly unreasonable." *Id.* (quoting *Doe v. Willits Unified School Dist.*, 473 Fed. Appx. 775, 775-76 (9th Cir. 2012)).

By Plaintiff's own admissions, CCA has not been deliberately indifferent.  CCA issued a statement to its students and faculty on October 11, 2023, only four days after the attack by Hamas. Within its statement, CCA offered sincere sympathy for those affected, and recognized the impact the attack and ensuing political crisis would have on its students.  (FAC Ex. E.)  It affirmed CCA's values as a diverse and interconnected learning community and offered resources for its students. Additionally, to address Plaintiff's concerns, Defendant removed the Instagram post and investigated the matter thoroughly. CCA took Plaintiff's concerns to heart and completed its due diligence.  Similarly, Defendant investigated complaints of harassment brought against Plaintiff. Notably, CCA's investigation concluded that Plaintiff had not violated any policies in sending emails to the Havurah group, but CCA also found that Plaintiff's actions in confronting students, taking their photos, and using her inherent authority as a faculty member in imposing her views violated Defendant's harassment policy.  As such, Defendant exacted reasonable and appropriate remedies in the form of additional DEI training.   Plaintiff now finds herself in the position of arguing that CCA's decision in her favor in one claim was fair, but its decision that she found unfavorable was somehow discriminatory or harassing.  The remaining allegations are either too

11

1   vague and conclusory to support the claim, or they were not "clearly unreasonable in light of the

2   known circumstances."

3        Finally, Plaintiff has failed to allege facts showing that she was denied "educational

4   benefits." *See Mandel,* No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871, at *57.  Such

5   facts should include a "disparately hostile educational environment relative to a peer," being forced

6   to alter teaching arrangements, or other material, psychological, or physical impacts of the alleged

7   hostile environment.  *Id.*  Plaintiff has offered no such allegations and, as a result, her Title VI

8   claim must be dismissed without leave to amend.

9        **C.     Plaintiff Fails to State a Claim Under Education Code Section 66270**

10              **1.     Plaintiff Does Not Have Standing Under Education Code Section
               66270.**

11

12       Education Code section 66252(g) states that the Legislature intends for this chapter, which

13   would encompass Education Section 66270, to be "interpreted as consistent with . . . Title VI of

14   the federal Civil Rights Act of 1964. . . ." However, Education section 66252 also makes it evident

15   that the Legislature's intent of the chapter is to protect <u>students</u>.  Specifically, subsection (a),

16   outlining the intent of the section states that:  "All *students* have the right to participate fully in the

17   educational process, free from discrimination and harassment."  (*Id.*, emphasis added.)  Plaintiff is

18   a professor.  Accordingly, she is not covered by this chapter of the Education Code and she has no

19   standing under Education Code section 66252.  Her claim must therefore be dismissed.

20              **2.     Plaintiff Does Not Sufficiently Plead Discrimination.**

21       Even if Plaintiff has standing to assert this claim, she still fails to sufficiently plead her

22   case.  Education Section 66270 states that: "No person shall be subjected to discrimination on the

23   basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity,

24   religion…in any program or activity conducted by any postsecondary educational institution that

25   receives, or benefits from, state financial assistance or enrolls students who received state student

26   aid."  However, as discussed above Education Code Section 66270 must be read consistently with

27   Title VI. As mentioned under Section III.B., *supra*, Plaintiff failed to sufficiently plead her Title

28   VI claim. As such, this claim must be dismissed.

                                                    12

1

**D.      Plaintiff Fails to State a Claim Under Government Code Section 12920.**

2        Plaintiff also brings claims of disparate treatment and hostile work environment under

3   California's Fair Employment and Housing Act ("FEHA").  FAC ¶ 200.  As an initial matter,

4   Plaintiff's claim must be dismissed because she failed to exhaust her administrative remedies with

5   the California Civil Rights Department.  *Leland v. City & Cnty. of San Francisco*, 576 F. Supp.

6   2d 1079, 1090 (N.D. Cal. 2008); *Foroudi v. Aerospace Corp.* (2000) 57 Cal. App. 922, 1002

7   (finding that "[b]efore pursuing a civil action asserting a violation of the FEHA, an employee must

8   file an administrative complaint with the DFEH and obtain a right-to-sure letter from the agency");

9   *Anicama v. Oracle Am., Inc.*, No. 23-cv-04640-EMC, 2024 U.S. Dist. LEXIS 124323 (N.D. Cal.

10   July 15, 2024), at *12 ("A right to sue letter from the EEOC satisfied the exhaustion requirement

11   only for the purposes of an action based on federal law such as Title VII, not for a state law action

12   under FEHA.").

13        Plaintiff's claim also fails for substantive reasons.  The elements of disparate treatment and

14   hostile work environment claims are the same under FEHA as Title VII.  *See Guz v. Bechtel Nat.*

15   *Inc.*, 24 Cal.4th 317, 354 (2000) (disparate treatment); *Lyle v. Warner Bros. Television Prods.*, 38

16   Cal. 4th 264, 278 (2006) (hostile work environment).  As a result, Plaintiff's FEHA claims fail for

17   the same reasons Plaintiff's Title VII claims fail.

18        Finally, Plaintiff's FAC purports to bring this claim under the "California Labor Code."

19   FAC ¶ 200.  A complaint must give "fair notice" and "enable" the defendant "to defend itself

20   effectively."  *Starr v. Baca*, 653 F.3d 1202, 1216 (9th Cir. 2011).  A pleading cannot be "so vague

21   and ambiguous" that a defendant "cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

22   Given that the FAC fails to allege specific sections of the Labor Code, the claim must be dismissed.

23

**E.      Plaintiff Fails to State a Breach of Contract Claim.**

24        In order to establish a prima facie claim for breach of contract, a plaintiff must establish

25   (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance;

26   (3) defendant's breach; and (4) resulting damages to the plaintiff.  *Nava v. VirtualBank*, No. 2:08-

27   CV-00069-FCD-KJM, 2008 U.S. Dist. LEXIS 72819, at *28 (E.D. Cal. July 16, 2008) (applying

28   California law).  To establish the existence of a contract, a plaintiff must prove that there are

13

(1) parties capable of contracting, (2) consent, (3) a lawful object, and (4) consideration.  Cal. Civ. Code § 1550.  "Consideration consists of a benefit bestowed or a detriment suffered as bargained for by the parties." *O'Brien v. XPO CNW, Inc*., 362 F.Supp.3d 778, 784 (N.D. Cal. 2018) (quoting *A.J. Industries, Inc. v. Ver Halen*, 75 Cal.App.3d 751, 761 (1977)).

Here, Plaintiff's breach of contract claim is deficient because she failed to plead adequate facts regarding the existence of a contract.  The alleged contract pleaded by Plaintiff consists of nothing more than Defendant's policy on Discrimination and Unlawful Harassment.  However, "[a] promise to conform to the law [FEHA] lacks consideration and is therefore unenforceable." *Farmearl v. Storopack, Inc*., No. C-04-02633 RMW, 2005 U.S. Dist. LEXIS 34293, at *30 (N.D. Cal. Sep. 12, 2005).

Plaintiff's claim also fails because she failed to plead any compensable damages resulting from the alleged breach.  Generally, emotional distress damages are not recoverable in a breach of contract claim, except for in extreme and traumatic circumstances.  *Erlich v. Menezes*, 21 Cal.4th 543, 559 (1999); *see also Kately v. Wilkinson*, 148 Cal.App.3d 576 (1983) (awarding emotional distress in a fatal waterskiing accident); *Chelini v. Nieri*, 32 Cal. 2d 480 (1948) (awarding emotional distress for failure to adequately preserve a corpse); *Burgess v. Superior Ct.*, 2 Cal.4th 1064 (1992) (finding emotional distress was warranted when an infant was injured during childbirth).  Here, Plaintiff has not pleaded any economic damages because she remains employed by Defendant at her same salary, and she has not been denied any raises or promotions.  Although she alleges she suffered emotional distress damages, the events alleged do not amount to extreme and traumatic circumstances.  Accordingly, Plaintiff's breach of contract claim is subject to dismissal without leave to amend.

## V.   CONCLUSION

For these reasons, the Court should dismiss Plaintiff's claims.

Dated:  October 15, 2024                                      JACKSON LEWIS P.C.

By:    /s/ Jessica C. Shafer
Angel R. Sevilla | Jessica C. Shafer
Julianna Bramwell
Attorneys for Defendant
CALIFORNIA COLLEGE OF THE ARTS

14

4856-4700-1582, v. 1

Def's Notice of Motion and Motion to Dismiss Pl's First
Amended Complaint Pursuant to Rule 12(B)(6) of the F.R.C.P.                    4:24-cv-03415-HSG